I am advised that an appeal has been taken from my order of March 26th, 1946, allowing John J. Clancy the sum of $6,500 for his services as special master in this cause. In order the better to understand the kind of services rendered by the master, it is necessary briefly to state the nature of the case in which he functioned. The suit was by one partner against his co-partner to have this court determine the respective rights and interests of those parties in the business, property, profits and assets of the co-partnership known as Federal Screw Machine Products Co. Complainant claimed to be possessed of a one-half interest while the defendant contended that that interest was for 33 3/4%. The complaint charged, amongst other things, that the defendant, Bruey, dominated the partnership and exercised control over its business, funds and properties and that while in such position the defendant had fraudulently misappropriated large sums of money belonging to the partnership and unlawfully retained money and property belonging to it, and had by means of overcharges for work done by him for the partnership mulcted the latter in a very substantial amount, and that the defendant had refused to account to the firm in respect of these matters. The bill also charged that the defendant claims title to all the machinery belonging to the firm, although all of that machinery had been purchased by the firm at the approximate cost of $86,000, in which the firm had its own actual capital investment and outlay of approximately the sum of $60,000. The bill prayed inter alia for an accounting and for the appointment of a receiver. The situation presented by the bill and the proofs was such that the need for the immediate appointment of a receiver was imperative and I made such appointment, which, after notice to the defendant and without objection by him, was confirmed. The receivership, which is still in effect, is an equity receivership. The firm, although then greatly embarrassed by the internal strife between the two partners, was on the brink of a successful industrial career. It had a number of war contracts which, if conserved, gave promise of substantial profits. The appointment was not made a bit too soon, for the very next morning, and *Page 78 
before banking hours, the defendant appeared at the depository where the firm kept its bank account and he withdrew and pocketed in cash $8,000 of the firm's money. The defendant was compelled later that day to return that money. When later examined, he admitted that he had withdrawn those funds with knowledge of the appointment of the receiver the afternoon before.
When the cause was at issue and referred to me, the parties, by their counsel, appeared and informed me that the subjects in dispute consisted principally of matters of accounting; that such accounting was very complicated and would require protracted hearings. It was suggested that the matter could be done more efficiently by a master. Accordingly, on December 21st, 1944, I made an order referring the disputes to Mr. Clancy. That order directed him to ascertain and report the respective shares and participating interests of the parties, the amount, if any, due from the defendant to the firm on the date of the appointment of the receiver and the amount, if any, due from him because of transactions arising after that appointment, and also to determine the reasonable allowance to be made to the defendant for certain secondary work performed by the defendant for the firm. That order of reference bears at the foot thereof the consent of the defendant.
The hearings before the master commenced on March 29th, 1945, and were concluded on September 7th, 1945. The hearings before him were many and the testimony amounts to over 1,800 pages. The exhibits offered by the parties were 165 in number. He filed his report with me on November 14th, 1945, which report, exclusive of schedules, comprises 65 pages, and all of it necessarily presented. By that report the master found and reported that the defendant was indebted to the firm and its receiver in the sum of $83,373.50. Both sides excepted to that report and I reserved decision. After several months' reading and study of this large record, I recently informed counsel that the exceptions filed by both sides would be overruled and the report would be confirmed. I informed them that not only was there abundant evidence to sustain each finding by the master but that I independently reached the same results and conclusions as he did. *Page 79 
The master applied for compensation to be paid out of the fund in the hands of the receiver. It might here be mentioned that the fund is a very substantial one. In the first six months of his operation the receiver showed a profit of over $100,000. There have been no subsequent accountings as yet, but the receiver has advised me that up until V-J Day he operated the business continuously and with considerable profit. Aside from the foregoing, the firm's machinery and equipment are worth a large sum of money. I mention all this so that the size of the allowance I made to Mr. Clancy will be considered as well in relation to the services rendered by him as also in respect of the ability of the receivership fund to respond thereto.
Mr. Clancy filed with me his affidavit of services, which shows 50 working days consumed by him in hearings, the reading of the testimony, and the preparation of his report. Both sides were noticed and they appeared before me on the question of the allowance to be made. Neither side questioned the amount of time that the master had spent, nor the importance of his commission or the high quality of the services rendered by him. The master asked for $7,500. The defendant said it was too high but refrained from suggesting any other figure. On the other hand, complainant's solicitor suggested that $6,000 had been well earned by the master and that his client was ready to consent to an order awarding that sum. I allowed $6,500. This affects both parties alike, for they are equal partners in the firm. In fixing this allowance, I was largely influenced by my own experience in the study of the huge record in this case. It took weeks of reading testimony relating to the accounting details and considerable testimony relating to technical details of production.
The master has had a very extensive experience in matters of this kind and here performed his task with ability. I feel that he fully earned the allowance granted him. *Page 80